**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
**ROBERT REISER & COMPANY,**                    )
)
**Plaintiff/Counterclaim-Defendant,**    )
)      **Civil Action No.**
**v.**                                          )      **15-11746-FDS**
)
**SCOTT SCRIVEN,**                              )
)
**Defendant/Counterclaim-Plaintiff.**    )
_____)

**MEMORANDUM AND ORDER ON**
**ROBERT REISER & COMPANY'S MOTIONS TO DISMISS**
**AND FOR JUDGMENT ON THE PLEADINGS**

**SAYLOR, J.**

This is a contract dispute arising out of an employment termination.  Jurisdiction is based

on diversity of citizenship.  Plaintiff Robert Reiser & Company (the "Reiser Company") has

brought suit against defendant Scott Scriven, a former employee, alleging claims for breach of

contract, conversion, and breach of the implied covenant of good faith and fair dealing.  Scriven

has brought counterclaims against the company, alleging claims for intentional

misrepresentation, breach of contract, breach of the implied covenant of good faith and fair

dealing, usury, undue influence, unconscionability, breach of fiduciary duty, and retaliation.

The Reiser Company has moved to dismiss seven of the eight counterclaims by Scriven.

It has also moved for judgment on the pleadings on all of its claims.  For the following reasons,

the motion to dismiss will be granted in part and denied in part, and the motion for judgment on

the pleadings will be denied.

I.     **Background**

    A.     **Factual Background**

Roger Reiser is the President and Chief Executive Officer of the Reiser Company, a supplier of food processing and packaging equipment located in Canton, Massachusetts. (Countercl. ¶ 1).  According to the counterclaims, at some point, the "the Board of Directors of the [c]ompany, with Jack Derby . . . serving as Chairman of the Board, implemented a plan to replace" Roger as President and CEO.  (*Id.* ¶ 3).  During 2012 and 2013, it had experienced difficulty recruiting senior executive candidates to join the company because Roger "had a reputation as [being] difficult to work with, and abusive."  (*Id.* ¶ 4).  The counterclaims allege that he "created a hostile work environment for women, minorities and others that promoted a culture and climate of intimidation and verbal abuse."  (*Id.* ¶ 5).

Scott Scriven was President and Chief Executive Officer at Weber, Inc., in Kansas City, Missouri.  (*Id.* ¶ 8).  He had held that position for nearly 14 years.  (*Id.*).  In February 2013, Roger Reiser contacted him to see if he was interested in working for the Reiser Company.  (*Id.*).  The counterclaims allege that Scriven learned from George Reiser and Roger Reiser "that they wanted a succession plan to insure the continuation of the [c]ompany for the 'next 50 years and beyond.'"  (*Id.* ¶ 9).

Over the course of several weeks, Scriven received calls from Roger Reiser, George Reiser, and Jack Derby.  (*Id.* ¶ 10).  During these calls, they reinforced the message that the board wanted a succession plan that resulted in the retirement of Roger.  (*Id.*).  George Reiser and Derby also told Scriven that Roger had "mellowed" and "wanted to step back."  (*Id.*).  The counterclaims allege that in "July 2013, Derby made certain representations and assured . . .

Scriven that if he joined the [c]ompany that [Roger] Reiser would 'step back from the business' and step down as President [and] CEO by mid-2015." (*Id.* ¶ 12).

On July 12, 2013, Scriven received an offer letter from the company. (*Id.* ¶ 13). He was offered the position of Senior Vice-President of Sales and Marketing, "reporting directly to Roger as CEO and President." (Def. Mem. Ex. A). The offer letter stated that should Scriven accept the position, his employment would be "at will," and the company could terminate his employment "at any time, for any reason, with or without notice." (*Id.*). The offer letter included a reference to a proposed "Long Term Incentive Plan" that aimed to provide long term incentive for two "Value Factors." (*Id.*). Because the long-term incentive plan was "a new compensation component for Reiser," the offer letter stated that "the specific legal language will need to be worked through, and [it] agree[d] to have this completed no later than 60 days after [Scriven's] initial start date." (*Id.*). The proposed plan would not, however, vest during the "initial five years." (Def. Mem. Ex. A).

The offer letter included a relocation package. As part of that package, the company offered Scriven a "$300,000 interest-free loan for the purchase of a new house." (*Id.*). The terms stated that "[i]t would be a note to Reiser secured by the property"; "[i]t would be a 20 year note"; "[p]ayments would begin in [y]ear 6"; and "[i]f [Scriven] were to leave Reiser, this note would be due." (*Id.*).

On July 22, 2013, Scriven accepted the offer from the company and submitted his resignation to his former employer. (Countercl. ¶ 14).

In late 2013, Scriven accepted a $400,000 loan from the company, which he used toward purchasing a townhome in Massachusetts for $405,000. (*Id.* ¶ 17). The terms of the additional $100,000 that were loaned to Scriven were set forth in e-mail correspondence. (Compl. ¶¶ 11-

12).  The $100,000 was also interest-free, and it was to be paid back with the proceeds from the sale of Scriven's home in Kansas City.  (Def. Mem. Ex. B).  During his employment, he never received a note or mortgage document.  (Countercl. ¶ 19).

According to the counterclaim, in August 2013, Scriven learned that the company did not pay overtime to non-exempt hourly employees, including service technicians.  (*Id.* ¶ 20).  He attempted to address that issue without success.  (*Id.* ¶ 21).  In January 2014, Scriven allegedly learned that the company "routinely over invoiced customers on machine purchases."  (*Id.* ¶ 22).  When he confronted George Reiser about the issue, he was told to mind his own business.  (*Id.* ¶ 23).  The counterclaim also alleges that Roger Reiser continued to create a hostile work environment.  (*Id.* ¶ 25).

On February 2, 2015, Scriven's employment was terminated.  (*Id.* ¶ 26).

On February 3, he received a letter from the company that allegedly made certain demands on him, "including the demand for a general release of the [c]ompany, [and] a quit claim deed conveying the subject [t]ownhome to Robert Reiser & Co."  (*Id.* ¶ 28).  The counterclaims allege that upon termination, Scriven was entitled to six-month severance pay if the company were to recommend a separation without cause.  (*Id.* ¶ 29).  "However, severance pay was suspended pending . . . Scriven['s] signing a general release in favor of Robert Reiser & Co. and to deed the subject real property to the [c]ompany[.]"  (*Id.*).  According to the counterclaims, on February 27, 2015, the company allegedly demanded that Scriven execute a 6-month promissory note "that was usurious on its face in violation of civil and criminal usury statutes."  (*Id.* ¶ 30).

When his employment ended, Scriven returned to his home in Kansas City.  (Compl. ¶ 2).  On June 12, 2015, Scriven sold the townhouse for $455,000.  (Countercl. ¶ 33).  At present,

$400,000 in funds from the sale are being held in escrow.  (*Id.*).

During his employment, Scriven was provided a company-owned laptop by the Reiser Company.  (Compl. ¶ 15).  He is still in possession of the laptop.  (*Id.* ¶ 21).

### B.      Procedural Background

On April 29, 2015, the Reiser Company filed the complaint in this action.  It alleges claims for (1) breach of contract, (2) conversion, and (3) breach of the implied covenant of good faith and fair dealing.

On June 23, 2015, Scriven answered and filed counterclaims.  The counterclaims allege claims for (1) intentional misrepresentation, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) usury, (5) undue influence, (6) unconscionability, (7) breach of fiduciary duty, and (8) retaliation.

On July 14, 2015, the Reiser Company filed a motion to dismiss all of Scriven's counterclaims, with the exception of the one for breach of contract.  On July 30, 2015, it filed a motion for judgment on the pleadings on all of its claims against Scriven.

## II.     Motion to Dismiss

### A.      Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

### B. Analysis

#### 1. Count One: Intentional Misrepresentation

Count One of the counterclaim alleges a claim for intentional misrepresentation. To establish intentional (or fraudulent) misrepresentation, Scriven "must show that [Robert Reiser & Co.] [1] 'made a false representation of a material fact [2] with knowledge of its falsity [3] for the purpose of inducing [him] to act thereon, and [4] that [he] reasonably relied upon the representation as true and acted upon it [5] to his damage." *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (2002)); *see also Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007).

Under Fed. R. Civ. P. 9(b), for claims "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purposes of that requirement are (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations. *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D.

Mass. 2003) (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)); *see also McGinty v. Beranger Volkswagen*, *Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980). Under the 9(b) heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representations to state a claim for fraud. *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006).

Count One alleges that the Reiser Company "made misrepresentations of material fact to induce [d]efendant to terminate his employment of 14 years with Weber Co." (Countercl. ¶ 37). It identifies three alleged misrepresentations:  (1) misrepresentations of material fact with regard to the succession plan and retirement of Roger Reiser; (2) misrepresentations of material fact with regard to formalizing the long-term incentive plan; and (3) and the failure to offer a note and mortgage at the time of closing.  (*Id.* ¶¶ 38-40).

The counterclaim fails to plead an actionable fraud or, at a minimum, to plead fraud with sufficient particularity.  As to the first claimed misrepresentation, the counterclaim alleges that the board wanted a succession plan that resulted in the retirement of Roger.  (Countercl. ¶ 10).  It is possible to assert a claim based on a statement of future intention if that statement was false when it was made; "'statements of present intention as to future conduct may be the basis for a fraud action . . . if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.'"  *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 226 (1st Cir. 2003) (quoting *McEvoy Travel Bureau Inc. v. Norton Co.*, 408 Mass. 704 (1990)).  The counterclaim here, however, contains no allegation that the statement misrepresented the actual intention of the Reiser Company at the time it was made. Furthermore, and in any event, the counterclaims do not sufficiently allege any injury or harm caused by the alleged misrepresentation.

As for the alleged misrepresentation of material fact with regard to formalizing the long-term incentive plan, the counterclaim fails to sufficiently allege that the statement did (or even could) cause him any damage.  According to the offer letter, the proposed long-term incentive plan would not vest during the "initial five years."  (Def. Mem. Ex. A).  Even accepting as true the allegation that the promise to formalize the plan within 60 days of Scriven's initial start date was a material misrepresentation, Scriven could not have been harmed by the failure to formalize the plan, because the incentive plan would not have vested at the time of his termination.

The alleged misrepresentation of fact with regard to the failure to offer a note and mortgage at the time of closing suffers from the same deficiency.  The counterclaim fails to sufficiently allege any injury or harm that flowed from the alleged misrepresentation.  Scriven was loaned the money, and purchased a property as anticipated.  If an injury somehow arose because the loan was not evidenced by a note or secured by a mortgage, the counterclaim does not so indicate.

In short, the misrepresentation allegations fail to state a claim, and accordingly the motion to dismiss Count One will be granted.

## 2. <u>Counts Four, Five, and Six:  Usury, Undue Influence, and Unconscionability</u>

Counts Four, Five, and Six of the counterclaim allege claims for usury, undue influence, and unconscionability based on the terms of the proposed February 2015 promissory note. Nowhere, however, does the counterclaim allege that Scriven actually executed the promissory note, or otherwise entered into a contract with the Reiser Company based on that proposed note. Under the circumstances, Scriven has no claim for usury, undue influence, or unconscionability. Accordingly, the motion to dismiss Counts Four, Five, and Six will be granted.

### 3.     Count Seven:  Breach of Fiduciary Duty

Count Seven of the counterclaim alleges a claim for breach of fiduciary duty.  "Scriven agrees with the assessment that as presently plead[ed], he cannot assert a claim for breach of fiduciary duty.  Scriven will withdraw this Count without prejudice to amending his counterclaim and add additional parties if necessary."  (Opp. Mem. at 12).  Count Seven will therefore be dismissed.

### 4.     Count Three:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Three of the counterclaim alleges a claim for breach of the implied covenant of good faith and fair dealing.  Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.  *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72.  The implied covenant may not, however, be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship.  *UNO Restaurants*, 441 Mass. at 385-86; *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  The counterclaim alleges four theories for the claim.

First, "[p]laintiff's actions in charging interest of 5% per month on the mortgage, compounded monthly, constitutes a breach of its contract with [d]efendant and a breach of its covenant of good faith and fair dealing and demonstrates the predatory loan servicing and 'loan to own' strategy in which [p]laintiff has engaged with its demand."  (Countercl. ¶ 53).  Again, there are no facts alleged in the counterclaim that Scriven actually agreed to the February 2015 promissory note, or that the Reiser Company is attempting to enforce that note against him.

Although a covenant of good faith and fair dealing is implied in every contract, it is not implied in every contract *offer*.

Second, the counterclaim alleges that "[p]laintiff breached the implied covenant of good faith and fair dealing under the employment agreement by terminating [d]efendant maliciously, and without cause, in bad faith and for reasons extraneous to the contract." (Countercl. ¶ 58). It alleges that "[p]laintiff discharged [d]efendant, not because of alleged poor performance, but because [d]efendant raised issues involving alleged violations of wage and labor laws and intentional overbilling of customers. Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive [d]efendant of the benefits thereof." (*Id.* ¶ 59). There is no dispute that Scriven was an at-will employee. (Def. Mem. Ex. A). "Despite the general rule that at-will employment agreements may be terminated by either party for any reason or no reason whatsoever, the employer remains 'accountable to a discharged employee for unpaid compensation if the employee were terminated in bad faith and the compensation is clearly connected to work already performed.'" *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 233 (D. Mass. 2006) (quoting *Harrison v. NetCentric Corp.*, 433 Mass. 465, 473 (2001)). Therefore, in order "to recover for a breach of the implied covenant of good faith and fair dealing, there must be 'conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage.'" *Id.* (quoting *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005)). The complaint contains no allegations identifying any specific benefits that the Reiser Company failed to provide to Scriven. It also contains no allegations explaining how a wrongful termination deprived him of any benefits.

Third, the counterclaim alleges that "[p]laintiff further breached the implied covenant of good faith and fair dealing by violating and failing to follow its own personnel policies on warnings and termination." (Countercl. ¶ 60).  There is nothing in the counterclaim that explains what those policies are, why they might apply to an at-will employee such as Scriven, or what compensable injury resulted.  At a minimum, this theory of breach of the implied covenant does not contain a "short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

Fourth, the counterclaim alleges that "[p]laintiff's actions of withholding severance pay to induce [d]efendant to sign a general release and other documents is a breach of contract with [d]efendant and a breach of its covenant of good faith and fair dealing." (Countercl. ¶ 54).  The allegation is based on an identical allegation to the breach of contract claim.  In fact, the claim itself acknowledges that the alleged conduct is the basis of the breach of contract claim.  However, pursuant to Fed. R. Civ. P. 8(d), a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Therefore, the allegation that the Reiser Company breached the implied covenant of good faith and fair dealing based on the alleged failure to make a timely severance payment is sufficient to state a claim.  Accordingly, the motion to dismiss Count Three will be denied as to the claim that plaintiff's severance payment was withheld or was not paid in a timely manner.

## 5. <u>Count Eight:  Retaliation</u>

Count Eight of the counterclaim alleges claims for retaliation under Mass. Gen. Laws ch. 149, § 148A and the common law.  It alleges that Scriven was terminated for (1) informing George Reiser of his concerns that the company was not paying overtime to non-exempt hourly

employees and (2) confronting George Reiser over the company's practice of over-invoicing customers.  (Countercls. ¶¶ 76-79).

Pursuant to the first paragraph of Mass. Gen. Laws ch. 149, § 148A, "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter."  The Massachusetts Supreme Judicial Court has determined that "[t]he plain language of the first paragraph [of § 148A] protects only actions taken by an employee 'to seek his or her rights' and does not provide similar protection for actions undertaken by a third party on behalf of another employee."  *Smith v. Winter Place LLC*, 447 Mass. 363, 368-69 (2006).  The second paragraph of Mass. Gen. Laws ch. 149, § 148A states that

> [a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person, or assists the attorney general in any investigation under this chapter, or has instituted, or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, shall have violated this section . . . .

The SJC has found that "the language of the second paragraph expands the range of persons and conduct protected by the statute, and likely would protect an employee (or manager) from being punished for asserting the right of another employee or complaining to management on that employee's behalf."  *Smith*, 447 Mass. at 369.  The complaint alleges that in August 2013, "Scriven became aware that the [c]ompany failed to pay overtime to non-exempt hourly employees, . . . [and] addressed this issue with [George] Reiser and continued to express his concerns for this practice."  (Countercls. ¶ 76).  Although the counterclaim is vague, it appears to allege a plausible claim.  Scriven allegedly expressed concerns about the nonpayment of overtime to non-exempt hourly employees to George Reiser.  He alleges that as a proximate

result of his conduct, the Reiser Company terminated him.  (*Id.* ¶ 78).  Therefore, the complaint states a claim for retaliation in violation of Mass. Gen. Laws ch. 149, § 148A.

In Massachusetts, "the general rule [is] that '[e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or no reason at all.'"  *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992) (quoting *Jackson v. Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988)).  However, Massachusetts courts "have recognized exceptions to that general rule . . . when employment is terminated contrary to a well-defined public policy."  *Id.*  As a result, "'[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).'"  *Id.* (quoting *Smith-Pfeffer v. Superintended of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-50 (1989)).  The common-law claim for retaliation appears to overlap with the claim under Mass. Gen. Laws ch. 149, § 148A.  Termination of employment as an act of retaliation in violation of Mass. Gen. Laws ch. 149, § 148A would also likely be "contrary to a well-defined public policy."  Therefore, the claim for retaliation under the common-law states a claim sufficient to survive a motion to dismiss.  Although the Reiser Company is correct that Scriven will need to present evidence of a causal connection between the protected activity and adverse employment action, evaluation of the causal connection is best left for a later stage of litigation.

Accordingly, the motion to dismiss Count Eight will be denied.

### III.  <u>Motion for Judgment on the Pleadings</u>

Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."  *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  It differs

from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006). To survive a motion for judgment on the pleadings, a plaintiff "must state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

The Reiser Company has moved for judgment on the pleadings on its claims against Scriven. It contends that Scriven breached the terms of his loan agreement and owes the Reiser Company $400,000. It also contends that he has not returned the company-owned laptop, and has therefore committed the tort of conversion.

At the present stage of litigation, the Court cannot grant the motion for judgment on the pleadings. As of this writing, no facts have been brought to the attention of the Court to suggest that Scriven is entitled to keep either the money or the laptop. Nonetheless, the Reiser Company is not entitled to the extraordinary remedy of judgment on the pleadings in favor of a plaintiff. If nothing else, Scriven has asserted affirmative defenses that if proved would bar recovery. Accordingly, the issue would be better evaluated at a later stage of litigation. The motion for judgment on the pleadings will therefore be denied.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the motion to dismiss by the Reiser Company is GRANTED

as to Counts One, Four, Five, and Six of the counterclaim, GRANTED as to Count Three of the

counterclaim, except to the extent it asserts a claim based on an alleged failure to make a timely

severance payment, and otherwise DENIED.  The motion for judgment on the pleadings by the

Reiser Company is DENIED.

**So Ordered.**


                                              /s/ F. Dennis Saylor
                                              F. Dennis Saylor IV
Dated: September 17, 2015                      United States District Judge